Carl E. OLSEN, Plaintiff,

v.

Eric HOLDER, Attorney General of the United States, Michele Leonhart, Acting Administrator, United States Drug Enforcement Administration, and Hillary Clinton, United States Secretary of State, all in their official capacities, Defendants.

No. 4:08–cv–00370 RP–RAW.

United States District Court, S.D. Iowa, Central Division.

April 27, 2009.

Christopher D. Hagen, U.S. Attorney's Office, Des Moines, IA, Tamara L. Ulrich, U.S. Dept of Justice–Civil Division Federal Programs Branch, Washington, DC, for Defendants.

Carl E. Olsen, Des Moines, IA, pro se.

## ORDER

ROBERT W. PRATT, Chief Judge.

On September 15, 2008, Plaintiff, Carl Olsen, filed an "Original Complaint for Declaratory and Injunctive Relief." Clerk's No. 1. Plaintiff's action asserts that the current scheduling of marijuana as a Schedule I controlled substance is unlawful under the Controlled Substances Act of 1970 ("CSA"). Specifically, Plaintiff contends that marijuana "no longer meets the statutory requirement for inclusion in Schedule I of the CSA" because several states have determined that marijuana has a legitimate medical use, in contradiction to the CSA's requirement that a Schedule I drug have "no currently accepted medical use in treatment in the United States." Pl.'s Compl. at 1; 21 U.S.C. § 812(b)(1)(B). Plaintiff seeks the following relief: 1) a declaratory ruling that the maintenance of

marijuana on Schedule I is unlawful; 2) an injunction against the Defendants [1] to prevent them from enforcing laws that treat marijuana as a Schedule I drug; and 3) an order requiring the Drug Enforcement Administration to either reschedule marijuana or to remove marijuana from the drug schedules entirely; and 4) an order requiring Defendants to initiate proceedings to remove restrictions on marijuana from international treaties.

Presently before the Court are the following motions: 1) Defendants' Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim upon which Relief can be Granted (Clerk's No. 6), filed November 17, 2008;[2] 2) Plaintiff's Motion for Summary Judgment (Clerk's No. 9), filed November 23, 2008;[3] 3) Plaintiff's Motion for Preliminary Injunction (Clerk's No. 10), filed November 24, 2008;[4] and 4) Plaintiff's Motion for Temporary Restraining Order (Clerk's No. 25), filed January 14, 2009.[5] In addition to these matters, Plaintiff has filed several Motions for Judicial Notice Pursuant to Federal Rule of Evidence 201. Clerk's Nos. 13, 19, 22, 28, 36.[6] As a preliminary matter, the Court grants Plaintiff's requests for judicial no-

tice, as they merely contain supplementary case law and documentation that Plaintiff believes relevant to the case.

## I. FACTUAL BACKGROUND

Plaintiff is a member and priest in the Ethiopian Zion Coptic Church, a recognized religion that employs marijuana as "an essential portion of [its] religious practice." Compl. ¶¶ 23–27. Plaintiff has been party to numerous lawsuits seeking, in one form or another, recognition of what he contends is his religious right to use marijuana. *See State v. Olsen*, 315 N.W.2d 1, 8 (Iowa 1982) (concluding that the State of Iowa had a compelling interest sufficient to override Olsen's claim that possession of marijuana was permissible as a free exercise of his religion); *United States v. Rush*, 738 F.2d 497, 512–13 (1st Cir.1984) (finding that Olsen was not entitled to assert a defense based on free exercise of religion because "[n]o broad religious exemption from the marijuana laws is constitutionally required"); *Olsen v. Drug Enforcement Admin.*, 776 F.2d 267, 268 (11th Cir.1985) (finding that Olsen's request to obtain a religious exemption from the marijuana laws fell outside the scope of 21

---

1. Plaintiff originally named Michael Mukasey, Attorney General of the United States, Michele Leonhart, Acting Administrator, United States Drug Enforcement Administration, and Condoleezza Rice, United States Secretary of State, as Defendants in this matter. The Court substitutes current Attorney General Eric Holder for former Attorney General Michael Mukasey and substitutes current Secretary of State Hillary Clinton for former Secretary of State Condoleezza Rice, pursuant to Federal Rule of Civil Procedure 25(d).

2. Plaintiff filed a resistance to the motion on November 22, 2008. Clerk's No. 8. Defendants filed a supplemental brief in support of the Motion to Dismiss on January 15, 2009. Clerk's No. 27. Plaintiff filed a supplemental response on January 20, 2009. Clerk's No. 33.

3. Defendants filed a resistance to the motion on December 17, 2008. Clerk's No. 17. Plaintiff filed a Reply on the same date. Clerk's No. 18.

4. Defendants filed a resistance to the motion on December 11, 2008. Clerk's No. 18. Plaintiff filed a Reply on December 14, 2008. Clerk's No. 16.

5. Defendants filed a resistance to the motion on January 26, 2009. Clerk's No. 34. Plaintiff filed a Reply on January 29, 2009. Clerk's No. 35.

6. The only Motion for Judicial Notice that Defendants have filed a response to is the one filed December 26, 2008. The Government filed its response on January 5, 2009. Clerk's No. 20. Plaintiff filed a Reply on January 6, 2009. Clerk's No. 21.

U.S.C. § 811); *Olsen v. Drug Enforcement Admin.*, 878 F.2d 1458, 1463 (D.C.Cir. 1989) (rejecting Olsen's claim that equal protection mandated an exemption for sacramental use of marijuana similar to the exception for peyote use by Native Americans and further finding that "the free exercise clause does not compel the DEA to grant Olsen an exemption immunizing his church from prosecution for illegal use of marijuana"); *Olsen v. Mukasey*, 541 F.3d 827, 832 (8th Cir.2008) (finding that Olsen's free exercise and equal protection claims were barred by collateral estoppel).

In the present case, Plaintiff has adopted a strategy somewhat different from that asserted in previous cases in his ongoing effort to decriminalize marijuana. Accordingly, a procedural summary of Plaintiff's activities in relation to the present matter is appropriate. In previous cases, Plaintiff has generally asserted that he has a First Amendment entitlement to use marijuana as part of the free exercise of his religion, or that an exception must be made to the marijuana laws to permit his religious use of it. Here, however, Plaintiff is not directly asserting either of these positions.[7] Rather, Plaintiff argues that: 1) a drug is only appropriately listed on Schedule I if it has "no currently accepted medical use in the United States"; 2) Congress gave the States the authority to determine what constitutes "accepted medical use" and the Supreme Court has reaffirmed the States' right to make that determination; 3) twelve states have passed laws finding that marijuana has "accepted medical use[s]"; 4) because

twelve states have concluded that marijuana has an "accepted medical use," the listing of marijuana in Schedule I is invalid; and 5) federal enforcement of the CSA with regard to marijuana is, therefore, unlawful. Plaintiff additionally contends that, because marijuana is improperly and unlawfully classified as a Schedule I controlled substance, the Defendants must undertake proceedings to amend any international treaties that require marijuana to be listed in Schedule I.

In his effort to bring his arguments to fruition, Plaintiff filed a "Petition for Marijuana Rescheduling" with the Drug Enforcement Administration ("DEA") on May 12, 2008. Clerk's No. 1.5 (Ex. 12). Therein, Plaintiff asserted the same arguments as in the present case, namely that marijuana is improperly listed as a Schedule I controlled substance because twelve states have concluded that marijuana has an "accepted medical use," contrary to the requirements listed in 21 U.S.C. § 812(b)(1) for inclusion of a substance in Schedule I. *Id.* The DEA sent Plaintiff a letter on June 25, 2008, stating that his Petition for Marijuana Rescheduling had been accepted for filing. Clerk's No. 1.6 (Ex. 16). On August 5, 2008, Plaintiff sent the DEA a document entitled, "Notice and Deadline to Cease and Desist Illegal Enforcement of Fraudulant [sic] Marijuana Regulation." *Id.* (Ex. 17). Therein, Plaintiff stated that the DEA's "current scheduling of marijuana in Title 21 Code of Federal Regulations, Section 1308.11 Schedule I, is in violation of federal law, Title 21 United States Code, Section 903."[8] *Id.* Plaintiff further

---

7. Plaintiff's Complaint does, however, allege that his "religious freedom is being irreparably injured by the DEA's unlawful scheduling of marijuana." Compl. at 14 (subpart F).

8. 21 U.S.C. § 903 provides:
 No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in

which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.

stated that failure by the DEA to cease and desist enforcement of the illegal marijuana regulation within 30 days would result "in a federal civil injunction being filed against the Drug Enforcement Administration" in federal court. *Id.* Having received no further response from the DEA, Plaintiff filed the present lawsuit on September 15, 2008. Clerk's No. 1.

In November 2008, the Defendants filed their Motion to Dismiss. Defendants' Motion first argued that Plaintiff's federal action must be dismissed on the basis that Plaintiff had not received a final determination from the DEA in regard to his Petition for Marijuana Rescheduling and that Plaintiff, therefore, had failed to exhaust his administrative remedies under the Administrative Procedures Act. *See* 5 U.S.C. § 704 (permitting judicial review of agency actions that are "made reviewable by statute [or] final agency action for which there is no other adequate remedy in a court"). Plaintiff filed a resistance to the Defendants' Motion to Dismiss urging that he was not required to exhaust administrative remedies before filing the present lawsuit.

On December 19, 2008, the DEA issued a nine page letter (the "DEA Letter") rejecting Plaintiff's Petition for Marijuana Rescheduling and declining to institute rulemaking proceedings for the purposes of rescheduling marijuana. *See* Clerk's No. 22. In light of the DEA Letter, the Defendants filed a Reply to Plaintiff's Resistance to the Motion to Dismiss, conceding that, "[b]ecause Plaintiff has now exhausted his administrative remedies, that portion of Defendants' motion to dismiss based on lack of administrative exhaustion is moot." Defs.' Reply at 2. While admitting that Plaintiff is now "entitled to federal court review of the administrative decision," however, Defendants maintain that jurisdiction is still improper because "[r]eview of administrative decisions under the CSA ... lies exclusively with the courts of appeal." *Id.*

On January 16, 2009, one day after the Defendants filed their Reply, Plaintiff "filed a Petition for Review in the United States Court of Appeals for the Eighth Circuit, pursuant to 21 U.S.C. § 877, from the 'DEA Letter' of December 19, 2008." Clerk's No. 28. Despite his filing with the Court of Appeals, Plaintiff maintains that the present lawsuit is appropriately before this Court on the basis that "[t]his Court is more qualified to authoritatively interpret the language of the CSA than the DEA." Pl.'s Supp. Resistance at 2.

## II. DEFENDANTS' MOTION TO DISMISS

The Defendants contend that Plaintiff's Complaint must be dismissed because this Court lacks subject matter jurisdiction over Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(1). Defendants further assert that Plaintiff has failed to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A. *Standard of Review*

A federal district court has subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal Rule of Civil Procedure 12(b)(1) provides that a party may raise the defense of "lack of jurisdiction over the subject matter" in a motion before answering the complaint filed in any action. Fed.R.Civ.P. 12(b)(1). Federal courts have a duty in every case to determine whether the prerequisite of subject matter jurisdiction has been satisfied. *Bradley v. American Postal Workers Union, AFL–CIO*, 962 F.2d 800, 802 n. 3 (8th Cir.1992). Because subject matter jurisdiction is a threshold consideration, a district court has "broader power to decide

its own right to hear the case than it has when the merits of the case are reached." *Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir.1993) (quoting *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir.1990)).

In order for the Court to dismiss a claim under Federal Rule of Civil Procedure 12(b)(1), the opposing party must successfully challenge the claim "on its face or the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir.1993). Facial challenges are limited to analyzing the face of the complaint. *Biscanin v. Merrill Lynch & Co., Inc.*, 407 F.3d 905, 907 (8th Cir.2005). Under a facial challenge, each factual allegation concerning jurisdiction is presumed to be true. *Titus*, 4 F.3d at 593. Thus, the moving party's motion can be "successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Id.* Factual challenges invoke facts other than those pled in the complaint. *Osborn v. United States*, 918 F.2d 724, 729 n. 6 (8th Cir.1990). If a party mounts a factual challenge, "the Court may look outside the pleadings to determine whether jurisdiction exists, and the nonmoving party loses the benefit of favorable inferences from its factual statements." *Dolls, Inc. v. City of Coralville*, 425 F.Supp.2d 958, 970 (S.D.Iowa 2006).[9]

### B. *Law and Analysis*

The CSA is a comprehensive federal regulatory scheme that makes it unlawful for any person to "knowingly or intentionally ... manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance," or to "possess a controlled substance," except "as authorized" by the CSA. 21 U.S.C. §§ 841(a), 844(a). Specifically, the CSA subdivides controlled substances into five "schedules." *See* 21 U.S.C. § 812(a). Schedule V controlled substances are the least regulated, whereas Schedule I substances are subject to the most stringent controls and the harshest penalties. The CSA provides the following guidelines for the scheduling of controlled substances:

(b) Placement on schedules; findings required

Except where control is required by United States obligations under an international treaty, convention, or protocol, in effect on October 27, 1970, and except in the case of an immediate precursor, a drug or other substance may not be placed in any schedule unless the findings required for such schedule are made with respect to such drug or other substance. The findings required for each of the schedules are as follows:

(1) Schedule I.—

(A) The drug or other substance has a high potential for abuse.

(B) The drug or other substance has no currently accepted medical use in treatment in the United States.

(C) There is a lack of accepted safety for use of the drug or other substance under medical supervision.

(2) Schedule II.—

---

9. As noted, Defendants also contend that dismissal is warranted under Federal Rule of Civil Procedure 12(b)(6). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), provides the applicable standard of review: A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 569, 127 S.Ct. 1955. That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level...." *Id.* at 555, 127 S.Ct. 1955. This standard is not a "heightened fact pleading" requirement, but "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 547, 556, 127 S.Ct. 1955. Because the Court lacks subject matter jurisdiction over Plaintiff's Complaint pursuant to Rule 12(b)(1), as explained *infra*, it will not address Defendants' Rule 12(b)(6) argument.

(A) The drug or other substance has a high potential for abuse.

(B) The drug or other substance has a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions.

(C) Abuse of the drug or other substances may lead to severe psychological or physical dependence.

(3) Schedule III.—

(A) The drug or other substance has a potential for abuse less than the drugs or other substances in schedules I and II.

(B) The drug or other substance has a currently accepted medical use in treatment in the United States.

(C) Abuse of the drug or other substance may lead to moderate or low physical dependence or high psychological dependence.

(4) Schedule IV.—

(A) The drug or other substance has a low potential for abuse relative to the drugs or other substances in schedule III.

(B) The drug or other substance has a currently accepted medical use in treatment in the United States.

(C) Abuse of the drug or other substance may lead to limited physical dependence or psychological dependence relative to the drugs or other substances in schedule III.

(5) Schedule V.—

(A) The drug or other substance has a low potential for abuse relative to the drugs or other substances in schedule IV.

(B) The drug or other substance has a currently accepted medical use in treatment in the United States.

(C) Abuse of the drug or other substance may lead to limited physi-cal dependence or psychological dependence relative to the drugs or other substances in schedule IV.

21 U.S.C. § 812.

Plaintiff's assertion that marijuana's presence on Schedule I is unlawful is based on a selective reading of § 812, and ignores other relevant language in § 812 and in the CSA in general. Section 812(a) provides for the establishment of the five schedules. Section 812(a), however, also specifically provides that the five schedules "shall initially consist of the substances listed in this section." 21 U.S.C. § 812(a). Marijuana was listed on Schedule I at the time of the CSA's enactment, under § 812(c), which provides that "Schedules I, II, III, IV, and V shall, *unless and until amended* pursuant to section 811 of this title, consist of the following drugs or other substances...." 21 U.S.C. § 812(c) (emphasis added); 21 U.S.C. § 812(c)(c)(10) (listing "marihuana" on Schedule I); *see also* 21 U.S.C. § 802(6) (providing that a "controlled substance" is "a drug or other substance ... included in schedule I, II, III, IV, or V of part B of this subchapter"). Section 812(b) then provides a forward-looking component to be used in future scheduling determinations, providing with limited exceptions that "a drug or other substance may not be placed in any schedule unless the findings required for such schedule are made with respect to such drug or other substance." 21 U.S.C. § 812(b).

"In enacting the statutory classifications of controlled substances, Congress expressly provided that its initial designation of the schedules would remain in effect "unless and until amended pursuant to section 811 of [the CSA]." " *United States v. Schrock,* 855 F.2d 327, 331 (6th Cir.1988); *see also Nat'l Organization for Reform of Marijuana Laws (NORML) v. Bell,* 488

F.Supp. 123, 141 (D.D.C.1980) ("In making the initial determination, Congress placed marijuana in Schedule I. The clear meaning of section 812(c) is that Congress intended marijuana to remain in Schedule I until such time as it might be reclassified by the Attorney General on the basis of more complete scientific information about the drug."); *United States v. Huerta*, 547 F.2d 545, 547 (10th Cir.1977) ("We are convinced that the clear intent of Congress was that the schedules should remain as initially adopted until changed by action of the Attorney General."); *United States v. Monroe*, 408 F.Supp. 270, 274 (N.D.Cal. 1976) ("The clear import of [the "unless and until amended" language in § 812(c) ] is that the substances initially listed by Congress on the schedules that it provided are to remain controlled substances until they are expressly removed from the schedules pursuant to section 811."). Thus, even accepting as true Plaintiff's proposition that marijuana does not meet the statutory criteria for inclusion on Schedule I outlined in 21 U.S.C. § 812(b)(1), the fact remains that marijuana was specifically named as a Schedule I controlled substance and will remain so until such time as that classification is amended or removed pursuant to the provisions of § 811.

Congress provided "a comprehensive reclassification scheme" in § 811 of the CSA. *United States v. Fogarty*, 692 F.2d 542, 548 (8th Cir.1982). Section 811 provides that the Attorney General [10] "may by rule" add drugs to a schedule or transfer a drug from one schedule to another if the Attorney General determines that the drug or substance has a potential for abuse and that the drug or substance otherwise meets the scheduling criteria under § 812(b). 21 U.S.C. § 811(a)(1)(A)-(B). Likewise, the Attorney General may remove a drug or substance from the schedules if he finds that the substance no longer meets the requirements for inclusion in any of the five schedules. *Id.* § 811(a)(2). Section 811(c) provides that the following factors with respect to the drug or substance under consideration are "determinative of control or removal" from the schedules:

(1) Its actual or relative potential for abuse.

(2) Scientific evidence of its pharmacological effect, if known.

(3) The state of current scientific knowledge regarding the drug or other substance.

(4) Its history and current pattern of abuse.

(5) The scope, duration, and significance of abuse.

(6) What, if any, risk there is to the public health.

(7) Its psychic or physiological dependence liability.

(8) Whether the substance is an immediate precursor of a substance already controlled under this subchapter.

21 U.S.C. § 811(c). Before undertaking any scheduling, rescheduling, or descheduling determination, however, the Attorney General must "gather[ ] the necessary data [and] request from the Secretary [of Health and Human Services] a scientific and medical evaluation, and [the Secretary's] recommendations, as to whether

---

**10.** The Attorney General has delegated authority concerning "functions vested in the Attorney General by the Comprehensive Drug Abuse Prevention and Control Act of 1970" to the Administrator of the Drug Enforcement Administration. 28 C.F.R. § 0.100(b). The Administrator of the Drug Enforcement Administration has, in turn, delegated this authority to the Deputy Administrator of the Drug Enforcement Administration, pursuant to 28 C.F.R. § 0.104. *See* App. to Subpart R, § 12. For simplification, the Court will refer to the Attorney General and the DEA interchangeably throughout this order.

such drug or other substance should be so controlled or removed as a controlled substance." 21 U.S.C. § 811(b). In making this evaluation and recommendation, the Secretary "shall consider factors (2), (3), (6), (7), and (8) [enumerated above] and any scientific or medical considerations involved in paragraphs (1), (4), and (5)." *Id.* "The recommendations of the Secretary to the Attorney General shall be binding on the Attorney General as to such scientific and medical matters...." Rulemaking proceedings by the Attorney General may be initiated by the Attorney General's own motion, at the request of the Secretary of Health and Human Services, or "on the petition of any interested person." 21 U.S.C. § 811(a).

The CSA provides a methodology for appeal of § 811 determinations by the Attorney General:

> All final determinations, findings, and conclusions of the Attorney General under this subchapter shall be final and conclusive decisions of the matters involved, except that any person aggrieved by a final decision of the Attorney General may obtain review of the decision in the United States Court of Appeals for the District of Columbia or for the circuit in which his principal place of business is located upon petition filed with the court and delivered to the Attorney General within thirty days after notice of the decision. Findings of fact by the Attorney General, if supported by substantial evidence, shall be conclusive.

21 U.S.C. § 877.

Plaintiff insists that, despite the detailed regulatory scheme set out for modification of the controlled substances schedules in the CSA, this Court has the authority to find that marijuana is not properly listed in Schedule I and to order the Defendants to cease and desist from enforcing laws arising from marijuana's classification as such. The Court dis-

agrees and finds that it lacks jurisdiction over the present matter because Plaintiff's proper and exclusive remedy is one he is already pursuing in parallel litigation, namely, he must petition the Attorney General for a re- or descheduling determination and, upon an adverse ruling, appeal the Attorney General's determination to the proper United States Court of Appeals in conformity with 21 U.S.C. § 877.

 "Where the intent of Congress is clear to require administrative determination, either to the exclusion of judicial action or in advance of it, a strong showing is required, both the inadequacy of the prescribed procedure and of impending harm, to permit short-circuiting the administrative process." *Aircraft & Diesel Equip. Corp. v. Hirsch,* 331 U.S. 752, 773–74, 67 S.Ct. 1493, 91 L.Ed. 1796 (1947). Given the precise language of the CSA, the Court finds it clear that Congress intended for marijuana to remain on Schedule I "unless and until" a re- or descheduling determination is made pursuant to the detailed guidelines articulated in § 811. *See United States v. Burton,* 894 F.2d 188, 192 (6th Cir.1990) ("[I]t has repeatedly been determined, and correctly so, that reclassification is clearly a task for the legislature and the attorney general and not a judicial one."); *United States v. Wables,* 731 F.2d 440, 450 (7th Cir.1984) ("We hold that the proper statutory classification of marijuana is an issue that is reserved to the judgment of Congress and to the discretion of the Attorney General."); *United States v. Middleton,* 690 F.2d 820, 823 (11th Cir. 1982) ("The determination of whether new evidence regarding either the medical use of marijuana or the drug's potential for abuse should result in a reclassification of marijuana is a matter for legislative or administrative, not judicial judgment."). Given this clear intent by Congress that rescheduling determinations be made in

accordance with the specific guidelines of § 811 and the fact that neither Plaintiff's Complaint nor any of his additional filings can be reasonably construed as alleging that the administrative process in § 811 is inadequate, the Court finds that jurisdiction in this forum is improper.

Plaintiff acknowledges the existence of the administrative procedures of § 811 and the fact that exclusive jurisdiction to appeal from an adverse DEA administrative determination lies with the Courts of Appeals. Nonetheless, Plaintiff insists that because he is seeking a declaration that marijuana is improperly classified as a Schedule I controlled substance, he need not follow the typical administrative review process. Plaintiff cites *Monson v. DEA,* 522 F.Supp.2d 1188, 1194 (D.N.D.2007) in support of this proposition.

In *Monson,* two North Dakota farmers with state licenses to cultivate industrial hemp sought a declaration that they could not be subjected to federal prosecution under the CSA for engaging in the state-licensed activity. 522 F.Supp.2d at 1191. The DEA argued that the district court lacked subject matter jurisdiction over the case because § 877 vested exclusive jurisdiction in the Courts of Appeals to review "final decision[s]" under the CSA. *Id.* at 1194. The district court rejected the DEA's jurisdictional argument, concluding that the plaintiffs were not appealing a final decision of the DEA, but rather were simply requesting a declaratory ruling that industrial hemp was not a controlled substance subject to regulation under the CSA. *Id.* at 1198. Relying on Eighth Circuit precedent, the *Monson* court determined that the plaintiff farmers could be prosecuted for growing industrial hemp, despite state authorization to do so, because industrial hemp fell squarely within the definition of marijuana in the CSA. *Id.* at 1200 ("The fact that the North Dakota Legislative Assembly has chosen to regu-late the growth of Cannabis in a manner contrary to federal law does not change its status as a Schedule I controlled substance under federal law.") (citing *United Stats v. White Plume,* 447 F.3d 1067 (8th Cir. 2006)).

Plaintiff contends that "[s]imilar to the plaintiffs in *Monson v. DEA,* the Plaintiff here seeks a declaration that the Controlled Substances Act does not apply to the Plaintiff's use of marijuana as a religious sacrament because marijuana is currently misclassified." Pl.'s Supp. Resistance at 6. The Court finds *Monson* easily distinguishable. In *Monson,* the plaintiff farmers argued that industrial hemp did not fall within the definition of "marijuana" in the CSA, i.e., that industrial hemp was never a controlled substance intended to be regulated by the CSA in the first instance. In the present case, Plaintiff does not assert that marijuana was *never* a controlled substance or that the inclusion of marijuana as a Schedule I substance at the time the CSA was enacted was improper. Rather, he contends that marijuana *no longer* meets the criteria for inclusion on Schedule I because several states have determined that it has an "accepted medical use in treatment in the United States" pursuant to 21 U.S.C. § 812(b)(1)(B). In short, the relief that Plaintiff seeks is relief Congress expressly anticipated in its formulation of the CSA. *See* 21 U.S.C. § 811(a) (authorizing the Attorney General to transfer a substance between schedules or to "remove any drug . . . from the schedules if he finds that [it] does not meet the requirements for inclusion on any schedule"). Furthermore, Plaintiff's argument is one for which Congress provided a specific and detailed administrative avenue of relief, as well as a means for appealing the denial of such relief. The Court, therefore, concludes that the present lawsuit amounts to nothing more than an attempt to circumvent

the clear Congressional intent to have scheduling determinations made by the Attorney General, consistent with the factors in § 811 and subject to review only by the Courts of Appeals.[11]

## III. CONCLUSION

For the reasons stated herein, Plaintiff's Motions for Judicial Notice Pursuant to Federal Rule of Evidence 201 (Clerk's Nos. 13, 19, 22, 28, 36) are GRANTED. The Court, however, finds that it lacks subject matter jurisdiction over the present action. Having exhausted his administrative remedies by petitioning the DEA to reschedule marijuana, Plaintiff's only recourse is to pursue an appeal of the DEA's adverse decision to the appropriate Court of Appeals, consistent with the provisions of 21 U.S.C. § 877. Accordingly, Defendants' Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim upon which Relief can be Granted (Clerk's No. 6) is GRANTED. Plaintiff's Motion for Summary Judgment (Clerk's No. 9), Plaintiff's Motion for Preliminary Injunction (Clerk's No. 10), and Plaintiff's Motion for Temporary Restraining Order (Clerk's No. 25) are DENIED as moot.

IT IS SO ORDERED

11. *See John Doe, Inc. v. Drug Enforcement Admin.*, 484 F.3d 561, 568 (D.C.Cir.2007) ("21 U.S.C. § 877 vests exclusive jurisdiction in the courts of appeals over '[a]ll final determinations, findings and conclusion' of the DEA applying the CSA."); *John Doe, Inc. v. Gonzalez*, No. 06–966, 2006 WL 1805685, at *18 (D.D.C. June 29, 2006) ("A plain reading of Section 877 indicates that jurisdiction over challenges to the DEA's determinations under the CSA rests exclusively with the Court of Appeals; indeed, the statute itself provides no other explicit avenue for judicial review and relief.").